UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SOLSTICE OIL & GAS I LLC                    CIVIL ACTION

VERSUS                                       NO: 12-2417

OBES INC. ET AL.                             SECTION: "J" (5)

**ORDER AND REASONS**

Before the Court is Third-Party Defendant JAM Petroleum, LLC
(JAM)'s **Motion for Summary Judgment (Rec. Doc. 107)**, Defendant
OBES Inc. (Ole Brook)'s opposition thereto **(Rec. Doc. 118)**, and
JAM's reply. (Rec. Doc. 123) Having considered the motion and
memoranda of counsel, the record, and the applicable law, this
Court finds that JAM's motion should be **GRANTED IN PART** for the
reasons set forth below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This action arises out of the drilling of the ML Mann et al.
No. 1 Well in West Avondale Field, St. Charles Parish, Louisiana.
On August 15, 2011, JAM and Solstice Oil & Gas, LLC (Solstice)
entered into a Joint Operating Agreement (JOA) regarding the
establishment of oil and gas leases. The JOA provides that JAM is
the Operator of leases formed under the agreement, and Solstice
is a non-operating interest-holder.

In its role as Operator, JAM contracted with Ole Brook to
provide JAM and Solstice with a directional driller and

directional driller services. JAM Petroleum is a three-member Louisiana Limited Liability Company that was formed in 2010 to engage in oil and gas production. Ole Brook is a privately held directional drilling corporation established in 2010 and incorporated in Texas. The two companies entered into a Master Service Agreement (MSA) on October 31, 2011, for work on the Well.

The MSA contains two provisions describing the indemnity obligations of JAM and Ole Brook. Paragraph 11(a) addresses Ole Brook's indemnity obligation as to JAM.

> 11.(a) [Ole Brook] agrees to indemnify, defend and save harmless [JAM] from and against any and all claims, losses, expenses (including without limitation all costs, demands, damages, suits, judgments, fines, penalties, liabilities, debts, attorneys' fees, and causes of action of whatsoever nature or character, whether known or unknown and including without limitation claims, losses, or expenses for property damage, bodily injury, illness, disease, death, pollution or loss of services, wages, consortium and society) in any way, directly or indirectly arising out of, or related to, the performance or subject matter of this Agreement, or the ingress or egress, or presence on any premises (whether land, building, vehicle, platform, aircraft, vehicle, or otherwise) owned, operated, chartered, leased, used, controlled, or hired by [JAM] or [Ole Brook], and *which are asserted by or arise in favor of any person, entity, or governmental agency (including without limitation, [JAM], [Ole Brook], and the contractors or subcontractors of each, and any employees, including the direct or borrowed employees of [Ole Brook], even if determined to be borrowed employees of [JAM] and/or their spouses, relatives, dependents, or estates), excepting only*

> *direct employees of [JAM] and* expressly including any
> claims, losses, or expenses actually or allegedly
> caused by the sole, concurrent, or partial negligence
> (of whatever nature or character), fault or strict
> liability of [JAM] or any other person or the
> unseaworthiness or unairworthiness of vessels or craft,
> whether or not preceding the execution of this
> Agreement.

(Rec. Doc. 107-1, p. 4; Rec. Doc. 107-3, p. 2)(emphasis added).

Paragraph 11(b) provides JAM's obligation to indemnify Ole Brook.

> 11.(b) [JAM] agrees to indemnify, defend and save
> harmless [Ole Brook] from and against any and all
> claims, losses, expenses (including without limitation
> all costs, demands, damages, suits, judgments, fines,
> penalties, liabilities, debts, attorneys' fees, and
> causes of action of whatsoever nature or character,
> whether known or unknown and including without
> limitation claims, losses, or expenses for property
> damage, bodily injury, illness, disease, death,
> pollution or loss of services, wages, consortium and
> society) in any way, directly or indirectly arising out
> of, or related to, the performance or subject matter of
> this Agreement, or the ingress or egress, or presence
> on any premises (whether land, building, vehicle,
> platform, aircraft, vehicle, or otherwise) owned,
> operated, chartered, leased, used, controlled, or hired
> by [JAM] or [Ole Brook], and *which are asserted by or
> arise in favor of [JAM]'s direct employees (and/or
> their spouses, relatives, dependents, or estates)*,
> expressly including any claims, losses or expenses
> actually or allegedly caused by the sole, concurrent,
> or partial negligence (of whatever nature or
> character), fault or strict liability of [Ole Brook] or
> any other person or the unseaworthiness or
> unairworthiness of vessels or craft, whether or not
> preceding the execution of this Agreement.

(Rec. Doc. 107-1, p. 3; Rec. Doc. 107-3, p. 2)(emphasis added).

The two indemnity provisions are largely identical, with the

3

exception of the language that the Court italicized in the excerpts above.

Additionally, JAM and Ole Brook included a Choice of Law provision in the MSA. Specifically, the parties agreed that Oklahoma law would govern the MSA and any claims deriving therefrom.

> This Agreement and all matters pertaining hereto or arising hereunder, including without limitation matters of performance, non-performance, rendition and supplying of and payment for goods and/or services, breach, remedies, procedures, rights, duties, obligations, interpretation and construction, shall be governed and determined by the laws of the State of Oklahoma without regard to or application of its conflicts of laws or decisions which would otherwise prescribe application of the laws of another state.

(Rec. Doc. 107-1, pp. 4-5; Rec. Doc. 107-3, p. 3)

The drilling of the Well did not go as planned, however, and on October 1, 2012, Solstice filed suit against Ole Brook. (Rec. Doc. 107-1, p. 5) Solstice alleges that Ole Brook did not drill the Well according to specifications. Id. Consequently, Solstice claims Ole Brook breached its obligations under the MSA, industry standards, and the standard of performance warranted in the MSA. Id. Ole Brook denied the allegations in the complaint and filed a third-party complaint against JAM, its member companies, and insurers for declaratory judgment, counter-claims, and cross-claims. (Rec. Doc. 31, p. 1) In the complaint, Ole Brook alleged

4

(1) that JAM is liable for the claims that Solstice asserts against Ole Brook because JAM's negligence caused Solstice's damages, (2) that JAM is obligated to defend and indemnify Ole Brook under the terms of the MSA, (3) a breach of contract claim against JAM under the MSA, and (4) a claim to enforce a default judgment that the Twenty-Ninth Judicial District Court for the Parish of St. Charles, State of Louisiana entered in favor of Ole Brook and against JAM. (Rec. Doc. 31, pp. 4-8)

JAM filed the instant Motion for Summary Judgment on August 26, 2014. Ole Brook opposed the motion on September 16, 2014. JAM filed a reply on September 24, 2014.

## THE PARTIES' ARGUMENTS

### A. Tort Contribution or Legal Indemnity

JAM asserts that Ole Brook's tort claims must fail. JAM argues that Ole Brook does not have a right to contribution from JAM even assuming that JAM and Ole Brook are joint tortfeasors. Specifically, Louisiana's tort law changed in 1996 and no longer holds joint tortfeasors solidarily liable absent any intentional or willful act. Today, a tortfeasor is liable only for the degree of fault attributed to his actions. Joint tortfeasors therefore no longer have a right to contribution by third-party demand or through an independent lawsuit. Rather, an alleged tortfeasor may

plead as an affirmative defense that another's fault caused the claimed injury, and if successful, the share of damages for which the alleged tortfeasor is responsible is reduced accordingly. Because Ole Brook has not alleged any intentional or willful conduct on the part of JAM, Ole Brook does not have a claim for tort contribution. Additionally, JAM argues that Ole Brook's claim for legal indemnity similarly fails because "Ole Brook has not alleged nor [are] there any facts to support any allegation that Ole Brook's fault in causing Solstice's damages was [merely] constructive and/or derivative." (Rec. Doc. 107-1, pp. 8-9) JAM therefore maintains that Ole Brook's claims for tort contribution and legal indemnity must fail.

Although Ole Brook concedes that the right of contribution is no longer recognized under Louisiana law (Rec. Doc. 118, p. 6), Ole Brook asserts that its legal or tort indemnity claim is meritorious because it was JAM's negligence that caused Solstice's damages. Ole Brook denies any and all liability for Solstice's alleged damages. Ole Brook alleges that JAM operated the Well at which Ole Brook provided directional drilling services. Ole Brook further alleges that "JAM, through its supervisors, representatives, company men, borrowed servants and/or agents controlled the drilling operations on a day-to-day basis and such decisions resulted in the drill apparatus getting

6

stuck on multiple occasions." (Rec. Doc. 118, pp. 1-2) Ole Brook therefore alleges that JAM's fault caused Solstice's damages. Thus, Ole Brook has stated a claim for tort or legal indemnity. Moreover, because Ole Brook is free from fault, and any liability imposed on Ole Brook would result from the fault of JAM and others, Ole Brook's claim for legal indemnity is meritorious.

In response, JAM contends that Ole Brook does not state a claim for legal or tort indemnity.  Although JAM acknowledges that the concept of legal indemnity exists today under Louisiana law, JAM argues that circumstances necessary for the application of legal indemnity do not exist in this case. JAM notes that Ole Brook admitted in its Answer to Solstice's Interrogatories that Ole Brook was the directional driller of the Well, and that Ole Brook actually performed the drilling work with its own tools. (Rec. Doc. 123, p. 3; Rec. Doc. 123-1, pp. 4-8) As such, its fault cannot be entirely derivative or constructive as is required to state a claim for legal indemnity. Consequently, JAM maintains that Ole Brook's claim for legal indemnity must fail.

**B. Contractual Claims**

JAM argues that it has no duty to indemnify, defend, and save harmless Ole Brook against Solstice's claims. Although the MSA contains a provision in which JAM agrees to indemnify Ole Brook, only claims asserted by JAM's direct employees or their

7

spouses, relatives, dependents, or estates implicate JAM's indemnity obligation under the provision. Because there is nothing in the record to suggest that Solstice is JAM's employee, JAM has no duty to indemnify Ole Brook for Solstice's claims against it. Moreover, Ole Brook agreed in the MSA to indemnify, defend, and save harmless JAM from any claims by Ole Brook for negligence or breach of contract, which Ole Brook alleges here. JAM notes that, according to the MSA's Choice of Law provision, Oklahoma law governs the MSA. Under Oklahoma law, an exculpatory provision like the indemnity clause in question is enforceable if it is (1) clear and unambiguous, (2) negotiated at arm's length with no disparity of bargaining power, and (3) not contrary to statute or public policy. Thus, because Ole Brook's indemnity provision is unambiguous, the result of arm's length negotiation between two parties of equal bargaining power, and in accord with statute and public policy, it is valid and enforceable. Thus, JAM may avail itself of the clause, and Ole Brook must indemnify JAM for JAM's negligence or breach of contract.

Ole Brook advances several arguments in opposition. As an initial matter, Ole Brook notes that JAM's summary judgment evidence–the JOA and MSA attached to its motion–is not authenticated and, therefore, an improper basis for a ruling on a summary judgment motion. Additionally, Ole Brook asserts that

there has not been enough time to allow for the necessary discovery as between Ole Brook and JAM. Consequently, this Court should either deny JAM's motion or grant a continuance of the motion to allow for further discovery. Next, Ole Brook argues that the MSA may not constitute the full agreement between the parties. Specifically, the MSA may have been modified by subsequent work orders or even by the parties' course of conduct. Ole Brook states that because JAM has not shown that work orders or the course of conduct did not modify the terms of the MSA, JAM's motion should be denied.

Alternatively, Ole Brook contends that JAM is not entitled to summary judgment because the provision requiring Ole Brook to indemnify JAM for JAM's negligence is unenforceable, whereas the provision obligating JAM to indemnify Ole Brook is valid and enforceable. First, Ole Brook contends that the Choice of Law provision that would dictate the application of Oklahoma law is invalid. Ole Brook begins by noting that a federal court sitting in diversity employs the substantive law of the state in which it is situated. Thus, Louisiana substantive law applies here. Ole Brook next explains that Louisiana courts will uphold and enforce a choice of law provision only when such provision does not violate a strong public policy of the state. Here, however, Ole Brook's indemnity provision, which purports to require Ole Brook

9

to indemnify JAM for JAM's own actions, violates the "public policy in Louisiana disfavoring indemnification of a party responsible for causation." (Rec. Doc. 118, p. 14) Thus, the Court must look to Louisiana's conflict of laws provisions, which support the application of Louisiana law. Finally, under Louisiana law, Ole Brook's indemnity provision is too generalized to unequivocally express Ole Brook's intent to indemnify JAM for JAM's own negligence. The provision therefore is not enforceable.[1] By contrast, Ole Brook argues that the provision requiring JAM to indemnify Ole Brook is not ambiguous and, therefore, is enforceable under Louisiana law.

Second, even if Oklahoma law applies, Ole Brook argues that evidence exists to suggest that Ole Brook and JAM were not of equal bargaining power, which would preclude an Oklahoma court from enforcing the indemnity provision. Specifically, Ole Brook provides an affidavit from its president, Jamie Jones, revealing that "this project was Ole Brook's only project at that time and that, at the time it entered into the MSA with JAM, this work was a significant portion of the annual revenue anticipated for Ole Brook and was important to the company's wellbeing." (Rec. Doc.

---

[1] Ole Brook also suggests that JAM somehow buried the Choice of Law provision in the fine print. Clearly, the provision appears in the same size font as the rest of the contract. The Court therefore will not address this argument further.

10

118, p. 15) Additional discovery is therefore necessary to explore whether the provision is enforceable under Oklahoma law. Ole Brook also seems to suggest that JAM possessed greater bargaining power than Ole Brook because each of JAM's three members is a business entity rather than an individual.

JAM responds by arguing that it is entirely disingenuous for Ole Brook to suggest at this stage of the litigation that the MSA may not govern the relationship between JAM and Ole Brook. JAM stresses that Ole Brook relies on the MSA in asserting its argument for contractual indemnity against JAM. Moreover, if any documents altering the MSA actually existed, such documents would have been created by Ole Brook, and Ole Brook would have attached them to its opposition to the motion for summary judgment. Additionally, JAM denies Ole Brook's assertion that this litigation is still in its early stages. Solstice filed its lawsuit against Ole Brook on October 1, 2012. Ole Brook filed its third-party complaint against JAM on July 15, 2013. Finally, JAM concedes that it did recently provide responses to Ole Brook's interrogatories and requests for production, but avers that it has not provided any new documents or information that Ole Brook did not already have through the litigation with Solstice.

Further, JAM stresses that Ole Brook has not shown that the Choice of Law provision is unenforceable. JAM argues that Ole

11

Brook has not identified a public policy of the State of Louisiana that would preclude a Louisiana court from enforcing the Choice of Law provision. JAM notes that Choice of Law provisions are presumptively valid, and the party contesting their validity bears the burden of proving the invalidity. Here, Ole Brook has not met its burden because its arguments are largely incoherent. If Ole Brook is arguing that the provision violates Louisiana's policy of strictly construing indemnity provisions and requiring that they be stated in unambiguous terms, then Ole Brook's argument fails. First, "there is nothing vague, ambiguous, or general about the language in the indemnity provisions in the MSA." (Rec. Doc. 123, p. 12) Second, Oklahoma law similarly requires courts to strictly construe indemnity provisions and mandates that the parties to the agreement make it unequivocally clear that they intended for a party to be indemnified for its own negligence. Thus, Oklahoma law governs the MSA. Finally, under Oklahoma law, the Choice of Law provision is enforceable. Both companies are small and similarly situated with equal bargaining power. Even though JAM's three members are companies, those companies are single-member entities. JAM further argues that the affidavit of Ole Brook's president suggesting that Ole Brook was dependent upon the project is self serving and only meant to mislead the Court.

12

## C. Enforcement of Louisiana Default Judgment

JAM asserts that this Court lacks jurisdiction to consider the merits of the default judgment issued by a Louisiana state court in favor of Ole Brook and against JAM. JAM argues that the default judgment should be declared a nullity, and the Louisiana court is in the best position to consider such a claim. Additionally, JAM contends that this Court lacks jurisdiction to review, modify, or reverse the state court judgment under the Rooker-Feldman doctrine. JAM has not exhausted its appeal rights at the state level. Specifically, JAM has demanded that the Louisiana court that rendered the default judgment nullify it for vices of both form and substance as permitted under Louisiana law. Thus, the default judgment is not a "final" judgment, and this Court cannot enforce it.

Ole Brook counter argues that the Rooker-Feldman doctrine is inapplicable to this case.  The Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks on state court judgments. Ole Brook seeks only to enforce the state court default judgment. Thus, it would be applicable here only if JAM challenged the state court judgment before this Court, which Ole Brook asserts is not the case. Additionally, Ole Brook stresses that if this Court refused to enforce the state court judgment, such refusal would amount to a violation of the Full

13

Faith and Credit Act. The default judgment is a final judgment under Louisiana law; all appeal deadlines have passed, and the nullity articles that JAM seeks to invoke in state court apply only to final judgments. This Court therefore should enforce the state court's default judgment.

In its reply, JAM again asserts that the state court default judgment is not a final judgment. JAM states that Ole Brook's attempt to enforce the judgment and its reliance on the Full Faith and Credit Act is misplaced because JAM's rights to challenge the default judgment in state court have not been exhausted. Specifically, JAM explains that it has filed a petition for nullity with the court that rendered the judgment. Thus, until the state court rules on the judgment, this Court cannot enforce it. In asking this Court to enforce the judgment, Ole Brook necessarily seeks to have this Court determine that the judgment is valid, which Ole Brook argues would violate the Rooker-Feldman doctrine.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED.

14

R. CIV. P. 56(c)); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).   When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008).   All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. <u>Little</u>, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).   The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party

15

will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

### A. Tort Contribution or Legal Indemnity[2]

"Contribution permits a tortfeasor who has paid more than his share of a *solidary obligation* to seek reimbursement from the other torfeasors for their respective shares of the judgment, which shares are proportionate to the fault of each." Hamway v. Braud, 2001-2364, p. 5 (La. App. 1 Cir. 11/8/02); 838 So. 2d 803, 807. Thus, contribution applies only when joint tortfeasors are solidarily liable. See id. However, the 1996 amendments to Louisiana Civil Code article 2324 "abolish[ed] solidary liability

---

[2] Although Ole Brook asserts a negligence claim against JAM, it does so based upon damages that Solstice suffered. (Rec. Doc. 31) The Court therefore construes any such negligence claim as one for tort indemnity or contribution.

among joint tortfeasors except in the case of intentional torts."
Farbe v. Casualty Reciprocal Exchange, 2000-0076, p. 3 n.3 (La.
7/6/00); 765 So. 2d 994, 996 n.3. Today, absent such intentional
or willful conduct, "[a] joint tortfeasor shall not be liable for
more than his degree of fault and shall not be solidarily liable
with any other person for damages attributable to the fault of
such other person." LA. CIV. CODE ANN. art. 2324. Here, Ole Brook's
third-party complaint alleges that JAM was negligent in directing
drilling operations at the Well, resulting in Solstice's injury.
The complaint contains no allegations of any intentional tort,
nor would the facts as presented by the parties support such an
allegation. The Court therefore finds that JAM is entitled to
summary judgment on Ole Brook's claim for contribution.

Next, the Court addresses Ole Brook's claim for legal or
tort indemnity. "Indemnity, which is based in the concept of
unjust enrichment, may lie when one party discharges a liability,
which another rightfully should have assumed." Hamway, 838 So. 2d
at 806. Legal indemnity "arises only when the fault of the person
seeking indemnification is solely constructive or derivative,
from failure or omission to perform some legal duty, and may only
be had against one who, because of his act, has caused such
constructive liability to be imposed." Id. Thus, a party who is
at all at fault does not have a claim for legal indemnity. Id.

17

"[B]ecause the party seeking indemnification must be without fault, a weighing of the relative fault of tortfeasors has no place in the concept of indemnity." Nassif v. Sunrise Homes, Inc., 98-3193 (La. 6/29/99); 739 So. 2d 183, 185. A court must analyze the "nature, not the quantum, of the fault, if any, of the party seeking indemnity." Lombard v. New Orleans Naval Support Activity, No. Civ.A.03-3020, 2004 WL 2988483, at *6 (E.D. La. Dec. 10, 2004)(Africk, J.). As such, the question before the Court is whether Ole Brook's fault is wholly constructive or derivative in nature, and therefore, Ole Brook is without actual fault.

In analyzing whether a defendant's fault could be entirely constructive or derivative in nature, a court will look to the plaintiff's complaint against the defendant seeking indemnity. "If the facts alleged by a plaintiff against the party seeking indemnity do not show that a defendant's liability could be predicated upon mere constructive or derivative fault, such defendant cannot state a cause of action for indemnity." Lombard, 2004 WL 2988483, at *6. For example, in Romero v. Witherspoon, the U.S. District Court for the Western District of Louisiana held that a defendant did not have a claim for indemnity when the plaintiffs' allegations against him were for active negligence. 7 F. Supp. 2d 808, 812 (W.D. La. May 7, 1998)(applying Louisiana

18

law). Specifically, the plaintiffs alleged that three doctors negligently failed to diagnose their daughter's brain tumor. Id. at 810, 812. One doctor alleged that the other doctors were in fact responsible for the failure to diagnose. Id. at 812. The court reasoned that the claim of negligent failure to diagnose was not "passive, technical, or vicarious" in nature. Id. Thus, the Court noted that if the doctor seeking indemnity were found to be liable for the plaintiffs' injuries, then it would be for his actual fault. Id.

Similarly, in Hamway, the Louisiana Court of Appeal for the First Circuit held that a claim for indemnity could not lie where the party seeking indemnity actually committed the acts leading to the plaintiff's injuries. See 838 So. 2d at 805-06. There, the plaintiff brought his car to Hamway's garage for repairs to the transmission, but a dispute arose. Id. at 805. Consequently, the plaintiff hired a tow truck to take his car elsewhere. Id. During the relocation, the car's upholstery was damaged by the transmission parts that Hamway's employees had placed inside the car. Id. Hamway brought an action for indemnity against the towing company, alleging that they instructed Hamway's employees to place the parts in the car. Id. at 806. However, because Hamway's employees actually placed the parts in the car, Hamway's fault was not constructive or derivative. Id. Additionally,

19

judgment had been rendered against Hamway, finding him to be at fault for the plaintiff's damages. Id.

The Court finds that the allegations contained in Solstice's complaint would not support a finding of liability based entirely upon constructive or derivative fault. As in Romero, Solstice alleges that Ole Brook engaged in active negligence when it alleges that, for example, Ole Brook negligently failed to properly steer the Well when it furnished faulty tools, relied on inaccurate data, or failed to verify the functionality of its tools. Ole Brook would not be held liable for these acts or omissions unless Ole Brook performed or failed to perform them. Thus, Ole Brook's fault could not be constructive or derivative. Moreover, Ole Brook cannot state a claim for indemnity by alleging that JAM instructed them to do the acts that caused Solstice's injuries. Like the garage in Hamway, Ole Brook still performed acts that allegedly caused Solstice's injuries. Ole Brook therefore is similarly unable to state a claim for indemnity. Although this case differs from Hamway in that a judgment has not issued against Ole Brook, the Court nevertheless concludes that Ole Brook's role was not entirely passive. Thus, any finding of fault would not be purely constructive or derivative in nature. Ole Brook will not required to pay any portion of Solstice's damages that may be attributable to JAM's

fault, however, Ole Brook is not entitled to indemnity. See, e.g., Manthos v. Jefferson Parish Library Dept., No. 07-1302, 2008 WL 2510573, at *3 (E.D. La. June 17, 2008)(Africk, J.); St. Martin v. Quintana Petroleum Corp., No. CIV. A. 98-2095, 2001 WL 121900, at *1 (E.D. La. Feb. 9, 2001)(Berrigan, J.). Thus, the Court finds that JAM is entitled to judgment as a matter of law on Ole Brook's legal indemnity claim.

**B. Contractual Claims**

### 1. Ole Brook's Breach of Contract Claim

JAM argues that it is entitled to summary judgment on Ole Brook's breach of contract claim because Ole Brook agreed in the MSA to indemnify, defend, and save harmless JAM from all claims arising under the contract, which JAM asserts would include Ole Brook's breach of contract claim. JAM's argument will only hold up, however, if Ole Brook's indemnity obligation is valid. Thus, the Court examines the enforceability of Ole Brook's indemnity provision.

To evaluate whether Ole Brook's indemnity provision is enforceable, the Court must first determine what law applies. The MSA provides that the laws of the State of Oklahoma shall govern

21

the relationship between the parties.[3] Under Louisiana law,
parties to an agreement may choose the law that will apply to the
contract, "except to the extent that law contravenes the public
policy of the state whose law would otherwise be applicable." LA.
CIV. CODE ANN. art. 3540. Here, it seems clear that Louisiana law
would otherwise govern the agreement but for the Choice of Law
provision. See, e.g., Hanover Petroleum Corp. v. Tenneco, Inc.,
521 So. 2d 1234, 1236 (La. App. 3 Cir. 1988)(finding that
Louisiana law applies where both the work that was contracted for
and the affected immovable property were in Louisiana). Thus, the
Choice of Law provision is enforceable so long as it would not
violate a public policy of Louisiana.

Ole Brook is correct in noting that "there is a public
policy in Louisiana disfavoring indemnification of a party
responsible for causation." (Rec. Doc. 118, p. 14)(citing Berry

---

[3] Ole Brook argues that the Court cannot consider the MSA that JAM attached
to its motion for summary judgment because JAM did not include an affidavit
authenticating the agreement. It seems clear to the Court, however, that the
agreement is what JAM says it is. Although Ole Brook questions the authenticity
of the agreement, Ole Brook fails to provide the Court with any document,
information, or circumstance in support. It is particularly telling that Ole
Brook argues that the MSA JAM provides is unauthentic, but relies on the MSA to
assert its third-party claims, and fails to provide any version of the MSA. The
Court is aware of the line of cases stating that evidence that is not
authenticated is improper summary judgment evidence, however, in those cases, a
genuine issue regarding the authenticity of the evidence existed. See, e.g.,
Dolan v. Parish of St. Tammany, No. 12-2911, 2014 WL 806462, at *4 (E.D. La. Feb.
28, 2014)(Vance, J.)(concluding that call logs were improper summary judgment
evidence where there were many discrepancies between the call logs and certain
call recordings and the call logs were unauthenticated). The Court finds that Ole
Brook has raised no such issue here.

v. Orleans Parish Sch. Bd., 01-3283 (La. 6/21/02); 830 So. 2d 283, 286). Such provisions are enforceable in Louisiana, however, provided that they are stated unequivocally. Home Ins. Co. of Illinois v. National Tea Co., 588 So. 2d 361, 364 (La. 1991). The question therefore becomes whether the indemnity provisions clearly express each party's intent to indemnify the indemnitee for its own negligence.

Here, the Court finds that the indemnity provisions clearly reveal that the parties intended to indemnify the indemnitee against the consequences of the indemnitee's own negligence. It is true that the provisions include the generalized language on which Ole Brook focuses in its opposition; the parties indemnify one another against "any and all claims." (Rec. Doc. 107-3, p. 2) However, the provisions do not stop there. Each indemnity provision goes on to "expressly includ[e] any claims, losses, or expenses actually or allegedly caused by the sole, concurrent, or partial negligence of [indemnitee]." Id. The Court therefore concludes that the Choice of Law provision does not violate the public policy of Louisiana disfavoring indemnification of a party responsible for causation.

Having determined that the Choice of Law provision is enforceable, the Court now must examine whether the indemnity provisions are valid under Oklahoma law. "Generally, exculpatory

23

clauses will be enforced [in Oklahoma] if the following conditions are met: (1) the 'clause clear[ly] and unambiguous[ly]' exonerates the defendant with respect to the claim; (2) there was 'no vast difference' in the bargaining power of the parties when they entered into the contract; and (3) enforcement of the clause will not violate public policy." Union Pacific R.R. Co. v. United States ex rel. U.S. Army Corps of Engineers, 591 F.3d 1311, 1321 (10th Cir. 2010)(emphasis omitted)(quoting Schmidt v. United States, 912 P.2d 871, 874 (Okla. 1996)). The Court will focus on the second element here, just as Ole Brook did in its opposition.

To confirm that no vast difference in the bargaining power of the parties existed at the time of the agreement, an Oklahoma court will consider "(1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the release and (2) the amount of free choice that party could have exercised when seeking alternate services." Schmidt, 912 P.2d at 875. In arguing that it is entitled to summary judgment on the contractual indemnity claims, JAM stresses that both companies are three-member entities. JAM further avers that there is "no evidence" that the job was necessary to Ole Brook, or that Ole Brook had no choice but to agree to the provision. However, in its opposition, Ole Brook argues that it was indeed largely

24

reliant on the Well project. Ole Brook provides an affidavit from its president, Jamie Jones, which reveals that this project was the only project at that time, and it represented a significant portion of the annual revenue anticipated by Ole Brook. Ole Brook does not discuss the test's second factor.

Although this evidence is thin, it is sufficient under Federal Rule of Civil Procedure 56(e) to oppose a motion for summary judgment. That is, it is sworn, demonstrates that the affiant is competent to testify, is based on the affiant's personal knowledge, and states evidentiary facts. See Fed. R. Civ. P. 56(e). A genuine issue of material fact therefore exists as to whether the MSA constitutes an arm's length contract as required to enforce the indemnity provisions under Oklahoma law. More discovery is necessary on this narrow issue to clarify whether the indemnity provisions are enforceable.

### 2. Ole Brook's Claim for Contractual Indemnity

JAM argues that it has no contractual duty to indemnify Ole Brook for any losses sustained because of claims that Solstice asserts against Ole Brook. JAM stresses that its duty to indemnify Ole Brook under the contract extends only to claims asserted by JAM's direct employees "and/or [those employees'] spouses, relatives, dependents, or estates." Thus, because Solstice is not a direct employee of JAM, JAM has no duty to

25

indemnify Ole Brook for the claims that Solstice asserts against Ole Brook. The Court agrees; the plain language of the contract supports JAM's interpretation of the indemnity provision. Under Oklahoma law, "construction of an unambiguous contract is a matter of law for the court." Walker v. Telex Corp., 583 P.2d 482 (Okla. 1978). [4] The Court therefore finds that JAM has no duty to indemnify Ole Brook for any losses sustained as a result of the claims that Solstice asserts against Ole Brook. JAM is entitled to summary judgment as to Ole Brook's claims for contractual indemnity.

## C. Enforcing the Louisiana Default Judgment

JAM argues that the Rooker-Feldman doctrine precludes this Court from enforcing a default judgment rendered by a Louisiana state court. Under the Rooker-Feldman doctrine, federal courts do not have the power "to entertain collateral attacks on state court judgments." Weaver v. Texas Capital Bank N.A., 660 F.3d 900, 904 (5th Cir. 2011) (quoting Liedtke v. State Bar of Tex., 18 F.3d 315, 317 (5th Cir.1994)). For purposes of this doctrine, a state court judgment is attacked when claims asserted in federal court are "inextricably intertwined" with those addressed

---

[4] Even if the language of JAM's indemnity provision were ambiguous, because the ambiguity would arise from the language of the contract rather than extrinsic facts, construction of the provision is still a matter of law for the court. Walker v. Telex Corp., 583 P.2d 482 (Okla. 1978).

by the state court judgment. Id. (quoting Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 350 (5th Cir.2003)). In addition, a state court judgment is attacked if "the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" Id. (quoting Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)).

JAM's invocation of Rooker-Feldman is misplaced. Ole Brook seeks to enforce a Louisiana state court judgment in its favor. Specifically, the Twenty-Ninth Judicial District Court for the Parish of St. Charles judgment in *OBES Inc., d/b/a Ole Brook Directional Services v. JAM Petroleum*, LLC, No76,008, Division E. (Rec. Doc. 107-1, p. 6) Although JAM argues that the judgment is not final because it seeks to have the judgment nullified, the Louisiana Code of Civil Procedure articles permitting actions of nullity speak of final judgments. See La. Code Civ. P. art. 2001. The Rooker-Feldman doctrine presents no obstacle to a federal court's enforcement of this state court judgment. JAM cannot prevent such enforcement by asserting as a defense that the state court's judgment is somehow faulty, and therefore, this Court would have to consider the merits of the judgment before enforcing it. Thus, JAM is not entitled to summary judgment that Ole Brook cannot enforce the Louisiana default judgment.

Accordingly,

**IT IS HEREBY ORDERED** that JAM's motion is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that JAM's motion is **GRANTED** with respect to Ole Brook's tort contribution and legal or tort indemnity claims.

**IT IS FURTHER ORDERED** that JAM's motion is **GRANTED** regarding Ole Brook's contractual indemnity claim.

**IT IS FURTHER ORDERED** that JAM's motion is **DENIED without prejudice** regarding Ole Brook's breach of contract claim. JAM may reurge the motion following further discovery regarding the enforceability of Ole Brook's indemnity provision under Oklahoma law.

**IT IS FURTHER ORDERED** that JAM's motion is **DENIED** with respect to the enforcement of the Louisiana state court default judgment.

New Orleans, Louisiana this 29th day of October, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE