UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOLSTICE OIL & GAS I LLC                    CIVIL ACTION

VERSUS                                      NO: 12-2417

OBES INC. ET AL.                            SECTION: "J" (5)

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 155)** filed by Plaintiff Solstice Oil & Gas I LLC (Solstice), Defendant OBES, Inc. (Ole Brook)'s opposition thereto (Rec. Doc. 176), and Solstice's reply. (Rec. Doc. 188) Having considered the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This action arises out of the drilling of the ML Mann et al. No. 1 Well in West Avondale Field, St. Charles Parish, Louisiana. On August 15, 2011, JAM Petroleum, LLC (JAM) and Solstice entered into a Joint Operating Agreement (JOA) regarding the establishment of oil and gas leases. The JOA provides that JAM is the Operator of leases formed under the agreement, and Solstice is a non-operating interest-holder.

In its role as Operator, JAM contracted with Ole Brook to provide JAM and Solstice with a directional driller and directional driller services. The two companies entered into a

Master Service Agreement (MSA) on October 31, 2011, for work on the Well. The MSA contains two provisions describing the indemnity obligations of JAM and Ole Brook. Paragraph 11(a) addresses Ole Brook's indemnity obligation as to JAM.

> 11.(a) Contractor agrees to indemnify, defend and save harmless Company Group from and against any and all claims, losses, expenses (including without limitation all costs, demands, damages, suits, judgments, fines, penalties, liabilities, debts, attorneys' fees, and causes of action of whatsoever nature or character, whether known or unknown and including without limitation claims, losses, or expenses for property damage, bodily injury, illness, disease, death, pollution or loss of services, wages, consortium and society) in any way, directly or indirectly arising out of, or related to, the performance or subject matter of this Agreement, or the ingress or egress, or presence on any premises (whether land, building, vehicle, platform, aircraft, vehicle, or otherwise) owned, operated, chartered, leased, used, controlled, or hired by Company Group or Contractor, and which are asserted by or arise in favor of any person, entity, or governmental agency (including without limitation, Company, Contractor, and the contractors or subcontractors of each, and any employees, including the direct or borrowed employees of Contractor, even if determined to be borrowed employees of Company and/or their spouses, relatives, dependents, or estates), excepting only direct employees of Company and expressly including any claims, losses, or expenses actually or allegedly caused by the sole, concurrent, or partial negligence (of whatever nature or character), fault or strict liability of Company Group or any other person or the unseaworthiness or unairworthiness of vessels or craft, whether or not preceding the execution of this Agreement.

(Rec. Doc. 107-3, p. 2) Paragraph 11(b) provides JAM's obligation to indemnify Ole Brook.

11.(b) Company agrees to indemnify, defend and save harmless Contractor from and against any and all claims, losses, expenses (including without limitation all costs, demands, damages, suits, judgments, fines, penalties, liabilities, debts, attorneys' fees, and causes of action of whatsoever nature or character, whether known or unknown and including without limitation claims, losses, or expenses for property damage, bodily injury, illness, disease, death, pollution or loss of services, wages, consortium and society) in any way, directly or indirectly arising out of, or related to, the performance or subject matter of this Agreement, or the ingress or egress, or presence on any premises (whether land, building, vehicle, platform, aircraft, vehicle, or otherwise) owned, operated, chartered, leased, used, controlled, or hired by Company Group or Contractor, and which are asserted by or arise in favor of Company's direct employees (and/or their spouses, relatives, dependents, or estates), expressly including any claims, losses or expenses actually or allegedly caused by the sole, concurrent, or partial negligence (of whatever nature or character), fault or strict liability of Contractor or any other person or the unseaworthiness or unairworthiness of vessels or craft, whether or not preceding the execution of this Agreement.

(Rec. Doc. 107-3, p. 2) The MSA defines "Company" as JAM Petroleum LLC; "Contractor" as Ole Brook Directional Services; and "Company Group" as "all affiliated or related companies, and its and their working interest owners, co-lessees, co-owners, partners, joint operators, joint venturers, contractors and subcontractors, and the agents, officers, directors, and employees of all of the foregoing." (Rec. Doc. 107-3, p. 1)

The drilling of the Well did not go as planned. The Well deviated drastically from the target bottom hole location, necessitating the drilling of a second well. Accordingly, on May

24, 2012, JAM assigned to Solstice all of JAM's rights under the MSA between JAM and Ole Brook as well as all of JAM's interests in the Well. Additionally, Ole Brook engaged PinPoint Drilling and Directional Services as its contractor to assist in drilling operations.

On October 1, 2012, Solstice filed suit against Ole Brook. Solstice alleges that Ole Brook did not drill the Well according to specifications. Consequently, Solstice claims Ole Brook breached its obligations under the MSA, industry standards, and the standard of performance warranted in the MSA. Ole Brook denied the allegations in the complaint and filed third-party complaints against JAM and New Tech Global Ventures, L.L.C. as well as counterclaims against Solstice. Ole Brook asserts that Solstice is liable for: (1) JAM's negligence, (2) Solstice's negligence, (3) set-off, (4) breach of contract, (5) specific performance, and (6) payment of PinPoint's invoices. Ole Brook further requests a declaratory judgment "that any ruling or judgment against JAM is on behalf of and binding on all members of the Company Group and that all entities with an ownership interest in the Well are bound by this Court's rulings to the same extent as JAM." (Rec. Doc. 31, p. 10)

As for Ole Brook's claims against JAM, this Court granted in part a motion for summary judgment by JAM on October 30, 2014. (Rec. Doc. 130) The Court construed Ole Brook's negligence

4

claims as claims for tort contribution and legal indemnity. The Court then granted the motion with respect to those claims. A claim for tort contribution is available only when the party against whom they are asserted engaged in intentional or willful conduct. LA. CIV. CODE ANN. art. 2324; <u>Farbe v. Casualty Reciprocal Exchange</u>, 2000-0076, p. 3 n.3 (La. 7/6/00), 765 So. 2d 994, 996 n.3; <u>Hamway v. Braud</u>, 2001-2364, p. 5 (La. App. 1 Cir. 11/8/02), 838 So. 2d 803, 807. A claim for legal indemnity is available only when the liability of the party asserting it is entirely derivative or constructive in nature. <u>Hamway</u>, 2001-2364, p. 5, 838 So. 2d at 807. Thus, because Ole Brook did not allege willful conduct and its liability was active in nature, the Court held that JAM was entitled to judgment as a matter of law on those claims. The Court denied the motion as to Ole Brook's claim seeking to enforce a Louisiana state court judgment in its favor. The Court similarly denied the motion with respect to Ole Brook's breach of contract claim, finding that there existed a genuine issue of material fact as to whether Ole Brook's promise to indemnify JAM against JAM's own negligence was enforceable.

On January 27, 2015, Solstice filed the instant *Motion for Summary Judgment on OBES, Inc.'s Counterclaims*. **(Rec. Doc. 155)** Solstice argues that it is entitled to summary judgment as to all of Ole Brook's claims against it. Ole Brook opposed the

motion on February 6, 2015.[1] (Rec. Doc. 176) Solstice replied on February 11, 2015. (Rec. Doc. 188)

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

---

[1] The Court extended the deadline for Ole Brook's opposition through and including February 6, 2015. (Rec. Doc. 163)

verdict if the evidence went uncontroverted at trial.'" <u>Int'l</u>
<u>Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th
Cir. 1991) (citation omitted). The nonmoving party can then
defeat the motion by either countering with sufficient evidence
of its own, or "showing that the moving party's evidence is so
sheer that it may not persuade the reasonable fact-finder to
return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving
party will bear the burden of proof at trial, the moving party
may satisfy its burden by merely pointing out that the evidence
in the record is insufficient with respect to an essential
element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at
325. The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial. <u>See,</u>
<u>e.g.</u>, <u>id.</u> at 325; <u>Little</u>, 37 F.3d at 1075.

<b><u>PARTIES' ARGUMENTS AND DISCUSSION</u></b>

**A. Ole Brook's Negligence Claims Against Solstice**

Solstice argues that it is entitled to summary judgment on
Ole Brook's negligence claims because Ole Brook lacks any valid
claim for tort contribution or legal indemnity under Louisiana
law. Ole Brook's negligence claims seek to hold Solstice liable

7

for its own negligence, JAM's negligence, and to have any damages paid by Ole Brook to Solstice "set off" by other awards Solstice receives under the MSA. Solstice argues that these claims are essentially claims for tort contribution or legal indemnity, which are without merit. Ole Brook's claim for tort contribution is without merit because Ole Brook has not alleged that Solstice engaged in any intentional or willful conduct. Ole Brook lacks a valid legal indemnity claim because its alleged fault is active, rather than constructive or derivative, in nature. Solstice therefore argues that it is entitled to judgment as a matter of law on these claims. Ole Brook's opposition does not address these arguments, focusing instead on its breach of contract claim. In reply, Solstice reasons that Ole Brook's silence amounts to a concession that Ole Brook's negligence claims fail.

The Court agrees that Solstice is entitled to summary judgment on Ole Brook's claims sounding in negligence. As this Court has previously held, Ole Brook cannot maintain a tort contribution claim in this case because Ole Brook has not alleged that Solstice or any other Third-Party Defendant engaged in intentional or willful conduct. See LA. CIV. CODE ANN. art. 2324; Farbe, 2000-0076, p. 3 n.3, 765 So. 2d at 996 n.3; Hamway, 2001-2364, p. 5, 838 So. 2d at 807; (Rec. Doc. 130, pp. 16-17). Also as this Court has previously held, Ole Brook's alleged

fault in this case is active in nature, which precludes Ole Brook from stating a valid claim for legal indemnity. <u>See Hamway</u>, 2001-2364, p. 5, 838 So. 2d at 807; (Rec. Doc. 130, pp. 17-21). Therefore, because the Court agrees that Ole Brook's claims against Solstice for Solstice's negligence, JAM's negligence, and for set-off are essentially claims for tort contribution or legal indemnity, the Court finds that Solstice is entitled to summary judgment as to these claims.

## B. Ole Brook's Contractual Claims Against Solstice

Solstice also argues that it is entitled to summary judgment on Ole Brook's contractual claims. These include Ole Brook's claim for breach of contract, specific performance under the MSA for payment of Ole Brook's and PinPoint's invoices, liability under the MSA for payment of PinPoint's invoices, and Ole Brook's claim for a declaratory judgment holding Solstice liable for the state court default judgment Ole Brook received against JAM. Ole Brook seems to base each of these arguments on Solstice's alleged obligations under the MSA. However, Solstice argues that Ole Brook lacks any breach of contract claim against Solstice under the MSA because the MSA does not obligate Solstice in any way. Further, when JAM assigned its rights under the MSA to Solstice, Solstice assumed only JAM's rights under the MSA and not its obligations. Louisiana law provides that "[a]n obligor and a third person may agree to an assumption by

9

the latter of an obligation of the former," but "[t]o be enforceable by the obligee against the third person, the agreement must be made in writing." (Rec. Doc. 155-2, p. 8)(quoting LA. CIV. CODE ANN. art. 1821). Additionally, the writing must *expressly state* the third party's intent to assume the obligor's obligation. Id. (citing La. Gaming Corp. v. JDH Ltd., L.L.C., 31,722, p. 5 (La. App. 2 Cir. 3/31/99), 736 So. 2d 940, 942). Ole Brook cannot cite to any writing in which Solstice expressly assumed JAM's obligations under the MSA, because no such writing exists. For these same reasons, Solstice argues that Ole Brook lacks a claim for specific performance for payment of Ole Brook's or PinPoint's invoices under the MSA. Solstice is not liable for JAM's obligations under the MSA, and Ole Brook has not provided any other basis for Solstice's liability for these amounts. Accordingly, Solstice cannot be held responsible or liable for the state court default judgment that Ole Brook won against JAM.

Ole Brook argues that a genuine dispute of material fact precludes summary judgment on its breach of contract claims. Specifically, Ole Brook asserts that the Settlement Agreement between Solstice and JAM, in which JAM assigned its rights "under all contracts" to Solstice, "raises a genuine factual dispute as to whether Solstice assumed the obligations of JAM

under [the MSA]." Ole Brook therefore argues that summary judgment is inappropriate as to this claim.

The Court finds that Solstice is entitled to summary judgment as to Ole Brook's contractual claims. Ole Brook argues that the following provision of the Settlement Agreement raises an issue of fact as to whether Solstice assumed JAM's liabilities under the MSA:

5. <u>Assignment of Rights and Claims</u>.

(a) Each of JAM and Avondale hereby sells, conveys, transfers, assigns and delivers to Solstice, free and clear of all Liens (except any Permitted Liens), (i) all rights under all contracts, agreements, leases, licenses, permits, authorizations, franchises and certifications, (ii) all sale orders, customer orders, open bids, warranties, prepaid expenses, deposits, certificates of deposit, retentions and refunds, (iii) originals or duplicate copies of all data and information (whether in paper or electronic format or any other medium) including without limitation all books and records, working files, technical data, financial, accounting and operating data, payroll and personnel records, credit information, cost and pricing information, supplier and service provider lists, contracts, business plans, and other similar property, rights and information, (iv) all bonds, including without limitation the posted state bond and related certificate of deposit and pledge in the amount of $25,000, endorsements and certificates of insurance and rights under insurance policies, (v) all claims, causes of action, suits, commercial tort claims, contract claims, counterclaims and rights against any person or entity, including without limitation all vendors, suppliers and service providers, whether matured or unmatured, direct or indirect, known or unknown, or absolute or contingent, and (vi) all other assets, rights and interests, <u>in each case</u> arising out of, in connection with or relating to the Operations, the Assets or the West Avondale Prospect.

11

(Rec. Doc. 176-2, pp. 4-5) The Court cannot conclude that anything in this provision clearly expresses an intent on the part of Solstice to assume JAM's obligations under the MSA.[2] Under Louisiana law, Ole Brook therefore cannot enforce JAM's obligations under the MSA against Solstice. See LA. CIV. CODE ANN. art. 1821; La. Gaming Corp., 31,722, p. 5, 736 So. 2d at 942. The Court therefore grants Solstice's motion with respect to the remaining claims, which all seem to the Court to be premised on Solstice's alleged assumption of JAM's liabilities under the MSA.

Accordingly,

**IT IS HEREBY ORDERED** that Solstice's *Motion for Summary Judgment* **(Rec. Doc. 155)** is **GRANTED**.

New Orleans, Louisiana this 27th day of February, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[2] And as Solstice correctly noted in its reply, "[w]hen a contract is not ambiguous or does not lead to absurd consequences . . . its interpretation is a question of law for a court to decide." See Johnson v. Orleans Parish Sch. Bd., 2012-0190, p. 3 (La. 5/31/12), 90 So. 3d 386, 388 (quoting Am. Deposit Ins. Co. v. Myles, 00-2457 (La. 4/25/01), 783 So. 2d 1282, 1286).